UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

ARACELI VAZQUEZ ROMERO, *individually* :
*and on behalf of others similarly situated*, :

:

Plaintiff, :     REPORT AND
:     RECOMMENDATION
-against- :
:     23-CV-6300 (OEM)(MMH)

LA MORENITA FRUIT MARKET CORP :
(d/b/a La Guadalupe Fruits & Vegetables), :
GABINO ARTURO RAMOS, and PAMELA :
RAMOS MEJIA, :

:

Defendants. :

------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Araceli Vazquez Romero brings this wage and hour "collective" action against

Defendants La Morenita Fruit Market Corporation, d/b/a La Guadalupe Fruits & Vegetables

("La Morenita"), Gabino Arturo Ramos, and Pamela Ramos Mejia, alleging violations of the

Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law

(the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.*, and related regulations. (*See generally*

Compl., ECF No. 1.)[1]  Before the Court is Plaintiff's third motion for default judgment

pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2.  (*See generally*

Pl.'s Mot., ECF No. 27.)  The Honorable Orelia E. Merchant referred the motion for report

and recommendation.  For the reasons set forth below, the Court respectfully recommends that

the motion should be **granted in part and denied in part**.

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.  Citations to the Local
Civil Rules are to the rules effective January 2, 2025, which were the operative rules when Plaintiff
filed the instant motion.

## I.  BACKGROUND

### A.  Factual Allegations

The following facts are taken from the Complaint, whose allegations are assumed to be true for the purposes of establishing liability.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

La Morenita is a New York corporation with its principal place of business located at 4807 5th Avenue, Brooklyn, New York, where it operates and controls a minimart under the name "La Guadalupe Fruits and Vegetables" ("La Guadalupe").  (Compl., ECF No. 1 ¶¶ 17–18.)  Ramos is the owner, officer, and/or agent of La Morenita, who determines the wages and compensation of La Morenita's employees, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.  (*Id.* ¶ 19.)  Mejia is the manager of La Morenita and performs the same function as Ramos regarding control of La Morenita's employees.  (*Id.* ¶ 20.)

Defendants employed Plaintiff as a cashier and food clerk at La Guadalupe from approximately March 2022 to May 24, 2023.  (*Id.* ¶¶ 4, 15, 33–34.)  Plaintiff's work schedule during her employment with Defendants was as follows:  from March 2022 to April 2022, she worked six days per week for an average of 60 to 61.5 hours per week; from May 2022 to August 2022, she worked six days per week for an average of 60 to 65 hours per week; from September 2022 to April 2023, she worked six days per week for an average of 64 to 68 hours per week; from April 17, 2023 to April 30, 2023, she worked seven days per week for an average of 84 hours per week; and from May 1, 2023 to May 24, 2023, she worked six days per week for an average of 76 hours per week.  (*Id.* ¶¶ 38–42.)  Throughout her entire employment, Defendants paid Plaintiff's wages in cash as follows: from March 2022 to June

2022, she was paid $650.00 per week; from July 2022 to August 2022, she was paid $750.00 per week; and from September 2022 to May 24, 2023, she was paid $810.00 per week. (*Id.* ¶¶ 43–46.) Defendants did not pay Plaintiff at all for her last three working days. (*Id.* ¶ 47.)

Additionally, Plaintiff alleges that her pay did not change even when Defendants required her to stay later or work longer than her usual schedule. (*Id.* ¶ 48.) For example, in approximately May 2022, Defendants required Plaintiff to work up to four extra hours past her scheduled departure time twice a month and did not pay her for the additional work. (*Id.* ¶ 49.) Defendants did not grant Plaintiff breaks or meal periods throughout her employment, did not track her time, and did not require her to track her time either. (*Id.* ¶¶ 50–51.) Defendants frequently paid Plaintiff her wages up to two weeks late. (*Id.* ¶ 52.) Defendants did not provide notice in English or Spanish regarding Plaintiff's pay rates, payday, or other required information, nor did they provide an accurate statement of wages. (*Id.* ¶¶ 53–55.)

### B.    Procedural History

Plaintiff initiated this action on August 22, 2023, alleging that Defendants failed to pay minimum and overtime wages under the FLSA and NYLL, and failed to pay spread of hours pay and to provide wage statements and wage notices under the NYLL. (*See generally* Compl., ECF No. 1.) Plaintiff served the summons and Complaint on La Morenita in August 2023 and on the Individual Defendants in September 2023. (Affs. of Service, ECF Nos. 6–8.) After Defendants failed to answer or otherwise respond to the Complaint, the Clerk of Court entered default on January 8, 2024. (ECF No. 14.)

Plaintiff initially moved for default judgment on March 22, 2024. (Pl.'s 1st Mot., ECF No. 15.) Then-Magistrate Judge Sanket J. Bulsara denied the motion without prejudice for failing to properly mail all motion papers to Defendants. (Sept. 26, 2024 Order.) The case

was reassigned to the undersigned in December 2024.  (Dec. 19, 2024 Dkt. Entry.)  Plaintiff

moved for a second motion for default judgment on January 24, 2025.  (Pl.'s 2d. Mot., ECF

No. 21.)  Judge Merchant referred the motion for report and recommendation.  (Jan. 27, 2025

Order Referring Mot.)   After the Court's preliminary review of Plaintiff's second motion,

Plaintiff was ordered to show cause as to why her motion should not be denied for failing to

file an affidavit or declaration showing compliance with the Servicemembers Civil Relief Act

as to the Individual Defendants and proof of mailing the motion to all Defendants at their

respective last known home or business addresses.  (Mar. 19, 2025 Order to Show Cause.)

This Court granted Plaintiff's request to withdraw her second motion for default judgment and

to file another default judgment motion.  (Pl.'s Ltr., ECF No. 24; Apr. 7, 2025 Order.)

On April 30, 2025, Plaintiff filed the instant motion, seeking damages including unpaid

minimum and overtime wages, spread of hours pay, liquidated damages, pre-judgment interest,

and attorneys' fees and costs.  (*See generally* Pl.'s 3d. Mot., ECF No. 27; Pl.'s Mem., ECF

No. 29.)  Judge Merchant referred Plaintiff's third motion for report and recommendation.

(May 1, 2025 Order Referring Mot.)  To date, Defendants have not appeared in this case or

responded to Plaintiff's motion.

## II.    **DEFAULT JUDGMENT STANDARD**

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party

to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104

(2d Cir. 2005); *Valerio v. K.A.M. Food Store, Inc.*, No. 19-CV-593 (MKB)(LB), 2019 WL

7764707, at *2 (E.D.N.Y. Dec. 26, 2019), *adopted by* 2020 WL 473614 (E.D.N.Y. Jan. 29,

2020).  First, when a party uses an affidavit or other proof to show that a party has "failed to

plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P.

4

55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  Second, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at \*5 (E.D.N.Y. Dec. 22, 2021), *adopted by* 2022 WL 842666 (E.D.N.Y. Mar. 22, 2022).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at \*3 (E.D.N.Y. Sept. 29, 2023) (citing *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)) (cleaned up), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023).  The Court must draw all reasonable inferences in favor of the movant.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (internal quotation marks omitted)).

## III.    **JURISDICTION AND VENUE**

### A.    **Subject Matter Jurisdiction**

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action."  *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*,

No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).  *See* 28 U.S.C. § 1331.  The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims.  28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sept. 14, 2024), *adopted by* 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024) (cleaned up).

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)).

The Court has personal jurisdiction over Defendants.  First, Plaintiff properly served La Morenita by delivering copies of the summons and Complaint to the New York Secretary of State.  (Aff. of Service, ECF No. 6.)  This method of service on a corporation complies with federal and state procedural rules.  Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  Plaintiff also properly served Ramos and Mejia

by delivering a copy of the summons and Complaint to a person of suitable age and discretion at their business address and by mailing a copy of process to Ramos and Mejia at their business address.  (Affs. of Service, ECF Nos. 7–8.)  These service methods follow federal and state rules for service on an individual.  Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2); *see Perez v. Mesa Azteca Corp.*, No. 23-CV-9374 (HG)(TAM), 2024 WL 5274641, at *5 (E.D.N.Y. Dec. 5, 2024) (recognizing that similar service methods on individual defendant complied with N.Y. C.P.L.R. § 308(2)), adopted by Order Adopting R. & R., *Perez v. Mesa Azteca Corp.*, No. 23-CV-9374 (HG)(TAM) (E.D.N.Y. Dec. 30, 2024).

Second, the Court has general jurisdiction over La Morenita, because it is a New York Corporation "'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Although Plaintiff does not allege Ramos or Mejia's domicile, the Court would have general jurisdiction over them if they were domiciled in New York.  *See Francis*, 2018 WL 4292171 at *3.  If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under [N.Y.] C.P.L.R. § 301, or specific jurisdiction, under [N.Y.] C.P.L.R. § 302." *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up).  Ramos and Mejia conducted business within the state and possessed operational control and ownership interest in, or controlled significant functions of, La Morenita.  (Compl., ECF No. 1 ¶ 22.)  This sufficiently establishes specific jurisdiction.  *See Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 241 (E.D.N.Y. 2024) ("Defendant Mr. Saleh serves or served

7

as owner, manager, principal, or agent of the Corporate Defendant and thus, he transacted business in New York.") (cleaned up).

Third, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C.    Venue

Plaintiffs may file suit in any judicial district in which (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or if no district qualifies, then (3) "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Venue is proper in this district because the failure to pay wages and to provide wage and notice statements occurred during Plaintiff's employment by La Morenita at La Guadalupe in Brooklyn, New York. (Compl., ECF No. 1 ¶¶ 15, 18, 21.)

### IV.    PROCEDURAL COMPLIANCE

Plaintiff does not demonstrate that she completed the procedural steps to comply with the requirements for default judgment motions.

First, Plaintiff did not comply with Local Civil Rule 55.2(a)(1)(C), which requires that "any party seeking a default judgment must file an affidavit or declaration showing that . . . the party against whom judgment is sought is not known to be a minor or an incompetent

person . . . ." Local Civ. R. 55.2(a)(1)(C). Plaintiff failed to include this affidavit regarding Ramos and Mejia, despite the Court's warnings that failure to comply with the Local Civil Rules warranted denial of default judgment. (*See* Sept. 26, 2024 Order; Mar. 19, 2025 Order to Show Cause.) Given that this is Plaintiff's third attempt to secure default judgment, the Court declines to excuse this procedural deficiency. Accordingly, the Court respectfully recommends that default judgment should be denied as to Ramos and Mejia for failure to comply with this district's Local Rules.

Second, even if Plaintiff had fully complied with the Local Civil Rules, default judgment should be denied as to Ramos and Mejia for failure to comply with the Servicemembers Civil Relief Act ("SCRA"). Pursuant to the SCRA, "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at \*5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)). Failure to comply with these requirements is sufficient to deny default judgment. *Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB)(JMW), 2022 WL 3648622, at \*5 (E.D.N.Y. July 5, 2022), *adopted by* 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).

Despite the Court's admonitions about the SCRA's requirements, Plaintiff fails to demonstrate compliance with the SCRA as of September 2023, when Ramos and Mejia were served with process. (*See* Mar. 19, 2025 Order to Show Cause (identifying non-compliance with the SCRA as grounds for denying default judgment).) The process server's affidavits of service do not state any investigation into either Defendant's status as a military

9

servicemember as of September 2023 when the summons and Complaint were served on Ramos or Mejia. (ECF Nos. 7–8.) Instead, the process server delivered the summons and Complaint to a "co-worker" at La Guadalupe for each of the Individual Defendants and mailed the same to their actual place of business. (*Id.*) "In other words . . . Plaintiff does not proffer any other information about the process server's attempts to confirm [Ramos and Mejia's] military status before Plaintiff requested default. On this record, the Court cannot find compliance with the SCRA." *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH), 2024 WL 1270816, at *3 (E.D.N.Y. Mar. 26, 2024), *adopted by* Order Adopting R. & R., *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH) (Sept. 20, 2024).

Plaintiff also fails to show that Ramos and Mejia were not active U.S. military servicemembers when the instant default judgment motion was filed. According to Plaintiff, "[u]pon information and belief," Ramos and Mejia are not active servicemembers because she "regularly saw them at La Guadalupe" where she worked. (Pl.'s Decl., ECF No. 28-6 ¶¶ 22–23.) But "[t]he non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Argila as Tr. for Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds v. Danco Builders Grp., Inc.*, No. 23-CV-4165 (NRM)(RML), 2025 WL 2469313, at *1 (E.D.N.Y. Aug. 21, 2025) (citation omitted), *adopted by* Order Adopting R. & R., *Argila as Tr. for Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds v. Danco Builders Grp., Inc.*, No. 23-CV-4165 (NRM)(RML), (E.D.N.Y. Sept. 27, 2025). Plaintiff's observations during her employment in 2022 and 2023 cannot support a reasonable inference about Ramos and Mejia's active duty status in 2025, when she sought default judgment for the third time. And Plaintiff does not

include any information about her own attempts to investigate Ramos or Mejia's active military status since filing this lawsuit, including, for example, a search through the Department of Defense's Service Members Civil Relief Act website. *See, e.g.*, *Tene*, 2024 WL 1270816, at *3 n.7 ("'Plaintiff's burden in this regard is not a heavy one, as the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty.'") (quoting *Pinela Jurado v. Sabor Hispano, Inc.*, No. 20-CV-1104 (RPK)(VMS), 2021 WL 11690645, at *7 (E.D.N.Y. Aug. 5, 2021)). Ultimately, the lack of sufficient evidence to show diligent investigation or to support reasonable inferences about Ramos and Mejia's status is fatal to Plaintiff's default judgment against them.

Because Plaintiff fails to demonstrate compliance with the SCRA, the Court respectfully recommends that the motion for default judgment against Ramos and Mejia should be denied. The remaining analysis applies to La Morenita only.

## V.    <u>DEFAULT JUDGMENT FACTORS</u>

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a

11

result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, "Defendant['s] non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Fallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022). Based on the foregoing, entry of default is permissible.

## VI. LIABILITY

### A. Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel*, 2023 WL 6338666, at *5. In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). The statute of limitations begins

to run when an employee begins to work for the employer. *Esquivel*, 2023 WL 6338666, at *5. Plaintiff began working for La Morenita in March 2022 and commenced this action on August 22, 2023. (*See* Compl., ECF No. 1 ¶¶ 15, 33; *see generally* ECF No. 1 Dkt. Entry.) Considering La Morenita's default, Plaintiff may recover under the FLSA and NYLL for any claims arising during her entire period of employment.

### B.    FLSA Coverage

"To establish a minimum wage or overtime claim under the FLSA, the Plaintiff[] must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the Plaintiff[] is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *6 (E.D.N.Y. Sept. 26, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025); 29 U.S.C. §§ 206(a), 207(a).

### 1.    Employer Subject to the FLSA

The Complaint alleges that La Morenita was Plaintiff's employer within the meaning of the FLSA. (Compl., ECF No. 1 ¶¶ 25, 71.) An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(a), (d). "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207. These

13

two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively. *Sanchez v. Ms. Wine Shop, Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *6 (E.D.N.Y. Mar. 16, 2022), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). Here, the Complaint states, in conclusory fashion that in 2022 and 2023, La Morenita owned and controlled a "mini market," that it "had a gross annual volume of sales of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated)," and that the "enterprise [was] directly engaged in interstate commerce" because "numerous items that were used in the mini market on a daily basis are goods produced outside of the State of New York." (Compl., ECF No. 1 ¶¶ 29–30.) On a motion for default judgment, such "conclusory allegations" may suffice to establish enterprise coverage "where it may be inferred from the type of business enterprise that it was engaged in interstate commerce." *Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-CV-4493 (AMD)(RER), 2022 WL 5428688, at *5 (E.D.N.Y. Aug. 16, 2022), *adopted by* 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022).

Further, Plaintiff's allegations meet the requirements of the individual coverage test, which considers whether "the employee is engaged in commerce or produced goods in commerce." *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH), 2024 WL 1251600,

14

at *3 (E.D.N.Y. Mar. 25, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH) (E.D.N.Y. Apr. 15, 2024). "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. Further, "[a]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in . . . handling . . . or in any other manner working on such goods." 29 U.S.C. § 203(j). Plaintiff alleges that she "regularly handled good in interstate commerce, such as food and other supplies produced outside the State of New York." (Compl., ECF No. 1 ¶ 35.)

Accordingly, Plaintiff's allegations are sufficient to establish FLSA enterprise and individual coverage.

### 2.    Employee Covered by the FLSA

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions). Whether a plaintiff-employee's activities fall under such exemptions is

15

a question of law. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30, n.28 (2d Cir. 2020) (citing *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012)).

Plaintiff alleges sufficient facts to establish that she was engaged in non-exempt employment under the FLSA. Specifically, Plaintiff alleges that she worked at the mini market as a cashier and food clerk who regularly handled food and other supplies produced outside of New York. (Compl., ECF No. 1 ¶¶ 34–35.) Employment in positions with similar duties is not exempt from the FLSA. *See, e.g.*, *Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) (finding that Plaintiff, a former "cashier/customer service attendant," was a non-exempt employee under the FLSA), *adopted by* 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018). Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions.[2] Accordingly, Plaintiff has shown that she is an employee within the meaning of the FLSA and qualifies for the protections of the FLSA.

## C.    NYLL Coverage

To plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve

---

[2] Because La Morenita defaulted, it does not assert or offer any facts to support a finding that Plaintiff is an exempt employee. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

16

a certain minimum in annual sales or business in order to be subject to the law." *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through [] 'the degree of control exercised by the purported employer over the employee.'" *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  The Court has already determined that La Morenita is Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B.1., *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition," La Morenita is Plaintiff's employer within the meaning of the NYLL. *Perry*, 2022 WL 1018791, at *7.  Accordingly, Plaintiff qualifies for NYLL protections.

### D.    Statutory Violations

In the Complaint, Plaintiff alleges that La Morenita violated the FLSA and NYLL minimum wage and overtime provisions (Counts 1 through 4) and the NYLL provisions related to spread of hours (Count 5).  (*See* Compl., ECF No. 1 ¶¶ 70–93.)  Plaintiff also alleges violations of New York Wage Theft Protection Act ("WTPA"), N.Y. Lab. Law §§ 195(1)(a) & 195(3), for failure to provide wage notices and wage statements (Counts 6 and 7).  (*Id.* ¶¶ 94–99.)  However, because Plaintiff does not request default judgment or pursue damages for the alleged WTPA violations (*see generally* Pl.'s Mem., ECF No. 27; Faillace Aff. Ex. 7, ECF No. 28-7 (damages chart)), Plaintiff waives those claims. *Esquivel*, 2023 WL 6338666, at *7.[3]

---

[3] Even if Plaintiff requested default judgment on the WTPA claims, the Court would respectfully recommend denying such relief.  To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm," *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024), and "[a]n 'asserted informational

### 1.    FLSA and NYLL

### a.    Minimum Wage (Counts 1 & 3)

Under the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *Chacha v. Nueva Era Flower Corp.*, No. 23-CV-3367 (AMD)(MMH), 2025 WL 2609246, at *9 (E.D.N.Y. Sept. 8, 2025) (quoting *McLaughlin*, 2024 WL 4184485, at *9), *adopted by* 2025 WL 2775917 (E.D.N.Y. Sept. 30, 2025).  The employee alleging unpaid minimum wages under the FLSA and the NYLL has the burden to show work she performed for which she was not properly compensated.  *Reyes-Fana*, 2022 WL 5428688, at *5 (citation omitted).  "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10.  "If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate."  *Tzilin*, 2024 WL 4309775, at *9 (quoting *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 119 (E.D.N.Y. 2023)).

As an initial matter, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiff is entitled to recover whichever minimum wage rate was the highest at any given time during her employment.  29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9.  Under New York law, the applicable minimum wage rate is

---

injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021), which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).  The Complaint alleges only that Defendants "failed to post at the workplace . . . the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL." (Compl., ECF No. 1 ¶ 61; *see also id.* ¶¶ 95, 98.)  Accordingly, "[w]ithout plausible allegations that [she] suffered a concrete injury because of [La Morenita's] failure to provide the required notices and statements, [Plaintiff] lacks standing to sue for that statutory violation." *Guthrie*, 113 F.4th at 311.

determined by the size and location of the employer and the dates of Plaintiff's employment. N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1). Plaintiff alleges that she worked from March 2022 to May 24, 2023, at La Guadalupe, La Morenita's mini market in Brooklyn, New York. (Compl., ECF No. 1 ¶¶ 4, 33.) While Plaintiff does not allege the number of persons La Morenita employed, during her employment, the NYLL minimum wage for all employers in New York City was $15.00 per hour. *See* N.Y. Lab. Law § 652(1)(a); 12 N.Y.C.R.R. § 142- 2.1(a)(1). Because the state and local minimum wage rate was higher than the federal minimum wage rate, Plaintiff thus is entitled to the local minimum wage rate of $15.00. *Compare* N.Y. Lab. Law § 652(1)(a) (New York minimum wage of $15.00 per hour for all employers in New York City on and after December 31, 2021) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Next, "for purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine [her] regular hourly rate of pay." *Ms. Wine Shop*, 643 F. Supp. 3d at 371 (cleaned up). Under the NYLL, the regular hourly wage rate for non-hospitality industry employees "shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16. Plaintiff alleges that she worked between 60 and 84 hours per week and was paid $650.00 to $810.00 per week. (Compl., ECF No. 1 ¶¶ 38–46.) Therefore, for most of her employment, Plaintiff's minimum wage was between approximately $10.70 per hour to $12.27 per hour, less than the applicable minimum wage.[4] Further, Plaintiff was paid $0 per hour for the three days when she worked

---

[4] Based on the allegations in the Complaint, Plaintiff's hourly rates were: (i) $10.70 per hour from March 2022 through April 2022 ($650.00 per week / 60.75 average weekly hours); (ii) $10.40 per hour from May 2022 through June 2022 ($650.00 per week / 62.5 average weekly hours); (iii) $12.00 per hour from July 2022 through August 2022 ($750.00 / 62.5 average weekly hours); (iv)

19

without pay. (*Id.* ¶ 47.) Plaintiff has therefore also established La Morenita's liability for failure to pay minimum wages under both the FLSA and the NYLL. *Sanchez v. Hyper Structure Corp.*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2815717, at *8 (E.D.N.Y. Feb. 24, 2023), *adopted as modified sub nom. Sanchez v. Trescly*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2473070 (E.D.N.Y. Mar. 13, 2023).

Plaintiff claims that, as a "food clerk," the New York Hospitality Industry Wage Order (the "Hospitality Wage Order") governs her regular rate of pay. (*See* Pl.'s Mem., ECF No. 29 ¶ 44.) Pursuant to the Hospitality Wage Order, "an employee's regular rate of pay is calculated by dividing an employee's weekly pay by 40, regardless of the total number of hours worked." 12 N.Y.C.R.R. § 146-3.5. The regulation applies to workers in a "restaurant," or "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, employees, or to members or guests of members[.]" *Id.* § 146-3.1(a)–(b). However, "Plaintiff does not sufficiently allege facts that demonstrate that [La Guadalupe] is a restaurant as defined by the Hospitality Wage Order." *Cazares v. Beety Mkt. Inc.*, No. 23-CV-320 (RPK)(PK), 2024 WL 3342288, at *7 (E.D.N.Y. Feb. 16, 2024), *adopted by Cazares v. Beety Market Inc.*, No. 23-CV-320 (RPK)(PK) (E.D.N.Y. Mar. 21, 2024); *see also Nasir v. Khokon*, No. 23 CV 2128 (DLI)(CLP), 2024 WL 4664722, at *5 n. 7 (E.D.N.Y. Aug. 26, 2024), *adopted by* Order Adopting R. & R., *Nasir v. Khokon*, No. 23 CV 2128 (DLI)(CLP)

---

$12.27 per hour from September 2022 through April 2023 ($810.00 / 66 average weekly hours); (v) $9.64 per hour from April 17, 2023, to April 30, 2023 ($810.00 / 84 weekly hours); and (vi) $10.66 per hour during her last month of employment, from May 1, 2023, to May 24, 2023 ($810.00 / 76 weekly hours), except for the last three days when she was not paid. (Compl., ECF No. 1 ¶¶ 38–47.)

(E.D.N.Y. Sept. 26, 2024).  The Complaint alleges only that La Guadalupe is a "mini market" (Compl., ECF No. 1 ¶¶ 2, 17) but does not allege facts about the nature of Plaintiff's duties as food clerk, including but not limited to whether she prepared food for customers' consumption or whether La Guadalupe even offered these services.  *Compare Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP), 2025 WL 959096, at *1, *9–10 (E.D.N.Y. Feb. 6, 2025) (applying the Hospitality Wage Order formula to calculate wages because Plaintiff worked "as a clerk in defendants' deli department, preparing food, cleaning, and performing clerical work"), *adopted by* Order Adopting R. & R., *Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP) (E.D.N.Y. Mar. 31, 2025).  Because Plaintiff has failed to properly allege facts to show that her wages are calculated pursuant to the Hospitality Wage Order,  the Court divides her weekly salary by the total number of hours worked to calculate her regular hourly rate.  12 N.Y.C.R.R. § 142-2.16.

Accordingly, the Court respectfully recommends that default judgment should be entered against La Morenita for violations of the FLSA's and NYLL's minimum wage provisions.

### b.    Overtime Wages (Counts 2 & 4)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'"  *Dejesus*, 726 F.3d at 88 (quoting 29 U.S.C. § 207(a)(1)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work."  N.Y. Lab. Law § 160.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy*

21

*v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that La Morenita failed to pay her the requisite overtime pay. Plaintiff alleges that during her employment with Defendants, she worked for approximately 60 to 61.5 hours per week from March 2022 through April 2022; 60 to 65 hours per week from May 2022 through August 2022; 64 to 68 hours per week from September 2022 through April 2023; 84 hours from April 17, 2023 through April 30, 2023; and 76 hours from May 1, 2023 through May 24, 2023. (Compl., ECF No. 1 ¶¶ 33, 37–42.) Plaintiff alleges that La Morenita "failed to pay . . . overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week." (*Id.* ¶ 78.)

The Court therefore respectfully recommends that La Morenita should be liable for failure to pay overtime wages under both the FLSA and NYLL.

### 2.    NYLL Spread of Hours Pay (Count 5)

The NYLL regulations provide that, for non-hospitality workers, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which . . . the spread of hours exceeds 10 hours[.]" 12 N.Y.C.R.R. § 142-2.4. The "spread of hours" is the length of time between the beginning and end of an employee's workday and includes working time plus time off for meals plus intervals off duty. *Id.* § 142-2.18. A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked more than ten hours on a given day but did not receive spread of hours pay. *Ms. Wine Shop*, 643 F. Supp. 3d at 378. "A limitation upon a plaintiff's eligibility to recover

for spread-of-hours is that the plaintiff [may] not earn more than the minimum wage." *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015) (cleaned up).

Plaintiff alleges she worked on average between 10 to 13 hours per day throughout her employment. (*See* Compl., ECF No. 1 ¶¶ 33, 37–42.) Plaintiff also claims that Defendants failed to pay her one additional hour's pay at the basic minimum wage rate for each day Plaintiff's spread of hours exceeded ten hours. (Pl.'s Mem., ECF No. 29 ¶¶ 47–50.) The Court already established that Plaintiff did not earn more than the minimum wage. (*See* § VI.D.1.a., *supra*.) "Notwithstanding that the Hospitality Wage Order does not apply, the more generally applicable spread of hours regulation, [12 N.Y.C.R.R.] § 142-2.4, does and provides the same relief." *Cazares*, 2024 WL 3342288, at *7.

Thus, the Court respectfully recommends that La Morenita should also be liable under the NYLL for unpaid spread of hours pay.

## VII.  **DAMAGES**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)) (cleaned up). "On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *4 (E.D.N.Y. Sept. 16, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Perry*, 2022 WL 1018791, at *3 (holding that in the context of a motion for default judgment on FLSA and NYLL claims, a plaintiff's recollection and estimates of hours worked are presumed correct) (cleaned up).

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Royal Thai Plus*, 2018 WL 1770660, at *10. Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9. Because the NYLL provides greater or equal recovery than the FLSA at all relevant times during Plaintiff's employment with La Morenita, the Court will apply the NYLL for all damages calculations. As described below, Plaintiff seeks unpaid minimum wage, overtime, and spread of hours pay; liquidated damages; pre-judgment interest; and attorneys' fees and costs. (Pl.'s Mem., ECF No. 29 ¶¶ 7–16.)[5]

---

[5] Plaintiff included both minimum and overtime wages calculations in her totals, which frustrated the Court's ability to quickly determine the amount of damages in each category.

### A.    Minimum Wage

Plaintiff requests unpaid minimum wages consisting of approximately $18,948.40. (Pl.'s Mem., ECF No. 29 ¶¶ 36–46; Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7 at 1.)

As stated, Plaintiff is entitled to the minimum wage rates set forth in the NYLL and its regulations.  (*See* § VI.D.1.a., *supra*.)  To calculate the minimum wage damages, the Court calculates the difference between Plaintiff's regular rate of pay and the applicable minimum wage, multiplied by the number of regular rate hours worked per week, and multiplied by the number of weeks during the relevant period.

Plaintiff alleges that, throughout her employment, she regularly worked over 40 hours per week throughout her employment.  (Pl.'s Decl., ECF No. 28-6 ¶¶ 8–13.)  Defendants paid Plaintiff $10.70 per hour from March 2022 through April 2022; $10.40 per hour from May 2022 through June 2022; $12.00 an hour from July 2022 through August 2022; $12.27 per hour from September 2022 to April 2023; $9.64 per hour from April 17, 2023 to April 30, 2023; and $10.66 per hour from May 1, 2023, to May 24, 2023.  (*See* § VI.D.1.a., *supra*.) Using the formula described above, Plaintiff is entitled to the unpaid minimum wages set forth in Table 1:

*Table 1: Unpaid Minimum Wages*

| Time Period | Min. Wage | Reg. Pay Rate | Diff. Min. & Reg. Wage | Reg. Hour per Week | Unpaid Wages per Week | # of Weeks | Total Unpaid Min. Wages |
|---|---|---|---|---|---|---|---|
| 03/2022 – 04/2022 | $15.00 | $10.70 | $4.30 | 40 | $172.00 | 8.57 | $1,474.04 |
| 05/2022 – 06/2022 | $15.00 | $10.40 | $4.60 | 40 | $184.00 | 8.57 | $1,576.88 |
| 07/2022 – 08/2022 | $15.00 | $12.00 | $3.00 | 40 | $120.00 | 8.71 | $1,045.20 |
| 09/2022 – 04/2023 | $15.00 | $12.27 | $2.73 | 40 | $109.20 | 32.43 | $3,541.36 |
| 04/17/2023 – 04/30/2023 | $15.00 | $9.64 | $5.36 | 40 | $214.40 | 1.84 | $394.50 |
| 05/01/2023 – 05/21/2023 | $15.00 | $10.66 | $4.34 | 40 | $173.60 | 2.86 | $496.50 |
| 05/22/2023 – 5/24/2023 | $15.00 | $0.00 | $15.00 | 40 | $600.00 | 0.29 | $174.00 |
| | | | | | | **Total:** | **$8,702.48** |

In contrast, Plaintiff applies the incorrect minimum wage rate for the damages calculation. Using the formula to determine a hospitality worker's hourly rate, Plaintiff divides her total weekly pay by only forty hours per week. (*See generally* Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7; Pl.'s Mem., ECF No. 29 ¶¶ 40–46.) For example, for the period between March 2022 through April 2022, Plaintiff calculates approximately $1,998.00 in unpaid minimum wages as follows: (($650.00 / 40 hours) – ($650.00 / 60.75 hours) x (40 hours per week) x (9 total weeks)). (Pl.'s Mem., ECF No. 29 ¶ 37.) However, Plaintiff's unpaid minimum wage damages should have been calculated as follows: (($15.00 – ($650.00 / 60.75 hours)) x (40 hours per week) x (9 total weeks)). The Court declines to adopt Plaintiff's formula.

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$8,702.48** in damages for unpaid minimum wages.

## B.     Overtime Wages

Plaintiff requests unpaid overtime wages of approximately $27,460.38. (Pl.'s Mem., ECF No. 29 ¶¶ 36–46; Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7 at 1.)

As noted, under the FLSA and NYLL, Plaintiff is entitled to overtime compensation of at least one and one-half times her regular hourly rate for hours worked over 40 per week. *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Brito*, 2022 WL 875099, at \*16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482 (DRH)(SIL), 2016 WL 7480358, at \*10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).

At all times during Plaintiff's employment, Defendants were required to pay Plaintiff at least $22.50 per hour (*i.e.*, $15.00 New York City minimum wage x 1.5) for any hours worked over 40 per week. "Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate . . . by the total number of overtime hours worked" per week and multiplied by the number of weeks during the relevant period. *Ms. Wine Shop Inc.*, 643 F. Supp. 3d at 377. Plaintiff worked varying weekly hours throughout her employment. (*See* Pl.'s Decl., ECF No. 28-6 ¶¶ 9–13.) Applying this formula, Plaintiff is entitled to the total unpaid overtime wages listed in Table 2:

Table 2: Unpaid Overtime Wages[6]

| Time Period | Min. OT Wage | Pay Rate | Diff. | OT Hours per Week | Unpaid OT per Week | # of Weeks | Total Unpaid OT |
|---|---|---|---|---|---|---|---|
| 03/2022 – 04/2022 | $22.50 | $10.70 | $11.80 | 20.75 | $244.85 | 8.57 | $2,098.36 |
| 05/2022 – 06/2022 | $22.50 | $10.40 | $12.10 | 22.5 | $272.25 | 8.57 | $2,333.18 |
| 07/2022 – 08/2022 | $22.50 | $12.00 | $10.50 | 22.5 | $236.25 | 8.71 | $2,057.74 |
| 09/2022 – 04/2023 | $22.50 | $12.27 | $10.23 | 26 | $265.98 | 32.43 | $8,625.73 |
| 04/17/2023 – 04/30/2023 | $22.50 | $9.64 | $12.86 | 44 | $565.84 | 1.84 | $1,041.15 |
| 05/01/2023 – 05/21/2023 | $22.50 | $10.66 | $11.84 | 36 | $426.24 | 2.86 | $1,219.05 |
| | | | | | | Total: | $17,375.21 |

Plaintiff incorrectly calculates the overtime rate based on an erroneous hourly wage rate. (*See* § VII.A., *supra*.) For example, for the period between July 2022 and August 2022, Plaintiff determined her unpaid overtime wages were roughly $3,266.37 as follows: (($18.75

---

[6] For example, between March 2022 to April 2022, Plaintiff worked 60.75 hours per week and was paid at the regular hourly rate of $10.70 for all hours worked, but she should have been paid $22.50 for the 20.75 overtime hours. The Court calculates her unpaid overtime for this period as $2,098.36 (*i.e.*, (($22.50 – $10.70) x 20.75 overtime hours x 8.57 weeks). Further, Plaintiff is not entitled to overtime pay for the three days she worked without pay because she did not work over 40 hours during that period.

x 1.5) – \$12.00) x 22.5 hours x 9 weeks).  (*See generally* Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7; Compl., ECF No. 1 ¶¶ 36–47.)  Because Plaintiff's formula is based on the incorrect determination of her regular rate of pay, Plaintiff's unpaid overtime damages are miscalculated, and the formula is rejected.

Therefore, the Court respectfully recommends that Plaintiff should be awarded unpaid overtime pay in the amount of **\$17,375.21**.

### C.      Spread of Hours Pay

Plaintiff requests unpaid spread of hours compensation in the amount of \$5,790.00. (Pl.'s Mem., ECF No. 29 ¶ 50; Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7 at 2.)

Under the NYLL, an employee is entitled to recover compensation for an extra hour of work at the minimum wage rate for each day that the employee works more than ten hours. *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH), 2024 WL 4131905, at *16 (E.D.N.Y. Sept. 10, 2024) (citing *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER), 2023 WL 7000934, at *5 (E.D.N.Y. Aug. 29, 2023), *adopted by* Order Adopting R. & R., *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER) (E.D.N.Y. Oct. 17, 2023)), *adopted by* Order Adopting R. & R., *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH) (E.D.N.Y. Sept. 30, 2024); 12 N.Y.C.R.R. § 142-2.4(a).  Like the unpaid overtime wages, spread of hours are calculated based on the applicable minimum wage rates for the relevant period. *Esquivel*, 2023 WL 6338666, at *13.

Plaintiff avers that she worked over 10 hours per day throughout her employment and that La Morenita failed to pay her spread of hours ("SOH") for those days.  (*See* Pl.'s Decl., ECF No. 28-6 ¶¶ 9–13.)  To calculate the SOH premium owed, the Court multiples the number of weeks per period by the SOH days per week and the minimum wage (*i.e.*, Weeks x SOH

Days Per Week x Minimum Wage). Therefore, Plaintiff is entitled to unpaid spread of hours pay as set forth in Table 3:

*Table 3: Unpaid Spread of Hours Pay*

| Time Period | Weekly Hours | Weekly Work Days | Hours per Day | SOH Days per Week | Min Wage | # of Weeks | Total Unpaid OT |
|---|---|---|---|---|---|---|---|
| 03/2022 – 04/2022 | 60.75 | 6 | 10.13 | 6 | $15.00 | 8.57 | $771.30 |
| 05/2022 – 06/2022 | 62.5 | 6 | 10.42 | 6 | $15.00 | 8.57 | $771.30 |
| 07/2022 – 08/2022 | 62.5 | 6 | 10.42 | 6 | $15.00 | 8.71 | $783.90 |
| 09/2022 – 04/2023 | 66 | 6 | 11 | 6 | $15.00 | 32.43 | $2,918.70 |
| 04/17/2023 – 04/30/2023 | 84 | 7 | 12 | 7 | $15.00 | 1.84 | $193.20 |
| 05/01/2023 – 05/21/2023 | 76 | 6 | 12.67 | 6 | $15.00 | 2.86 | $257.40 |
| 05/22/2023 – 05/24/2023 | 38 | 3 | 12.67 | 3 | $15.00 | 0.29 | $13.05 |
| | | | | | | Total: | $5,708.85 |

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$5,708.85** for unpaid spread of hours pay.

## D.    Liquidated Damages

Plaintiff requests liquidated damages of $52,198.78. (Pl.'s Mem., ECF No. 29 ¶ 60; Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7 at 2.)

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law. *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260 & N.Y. Lab. Law § 198(1-a)). However, the Second Circuit "interpret[s] the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct. Double recovery is generally disfavored." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). A court may award damages under whichever statute allows for greater recovery. *See id.*

29

Here, where La Morenita has defaulted and therefore makes no showing that it acted in good faith when underpaying Plaintiff, the greater liquidated damages available under the NYLL are appropriate. As noted, Plaintiff's calculated damages for unpaid minimum wage, overtime compensation, and spread of hours pay are incorrect. (*See* §§ VII.A–C., *supra*.) Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$31,786.54**[7] in liquidated damages under the NYLL.

### E.        Pre-judgment Interest

Plaintiff seeks, as of April 30, 2024, prejudgment interest of $11,727.76. (Pl.'s Mem., ECF No. 29 ¶ 63; Faillace Decl., Ex. 7 (damages chart), ECF No. 28-7 at 2.)

The FLSA does not allow for any pre-judgment interest where plaintiffs also receive liquidated damages. *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). "However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Collado*, 2025 WL 959096, at \*11 (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)). Accordingly, Plaintiff is eligible to recover pre-judgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per year, but not on liquidated damages. *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 60 & n.7 (E.D.N.Y. 2024) (citing N.Y. C.P.L.R. § 5004).

---

[7] This number consists of $8,702.48 (unpaid minimum wages) + $17,375.21 (unpaid overtime wages) + $5,708.85 (unpaid of spread of hours pay).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)). Courts generally calculate pre-judgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *See, e.g.*, *Rosas*, 2024 WL 4131905, at *17.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded. (*See* § VII.D., *supra*.) The Court calculates prejudgment interest by determining the midpoint of the relevant period. The Court selects October 11, 2022, the midpoint between Plaintiff's start date of employment (March 1, 2022) and Plaintiff's end date of employment (May 24, 2023), as a reasonable intermediate date. Applying a nine percent per year rate, the Court respectfully recommends that Plaintiff should be awarded **$9,776.48** in pre-judgment interest to increase at a rate of $7.84 per day.[8]

### F.  Attorneys' Fees

Plaintiff seeks $2,935.00 in attorneys' fees based on 11.38 hours of work for attorneys and support staff at the law firm Michael Faillace & Associates PC. (Pl.'s Mem., ECF No. 29 ¶¶ 64–69; Faillace Decl., Ex. 8, ECF No. 28-8 at 1.)

---

[8] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages for Plaintiff ($31,786.54) by 9%, then dividing by 365, for a daily rate of $7.84. The daily rate is then multiplied by 1,247, the number of days between October 11, 2022 and March 11, 2026, the date of this Report & Recommendation.

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) (citing 29 U.S.C. § 216(b) & N.Y. Lab. Law §§ 198(1-a), 663), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "The method for determining reasonable attorneys' fees in this Circuit is based on several factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases." *Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902 (EK)(RLM), 2022 WL 543026, at *7 (E.D.N.Y. Jan. 10, 2022) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190), *adopted by* 2022 WL 541795 (E.D.N.Y. Feb. 23, 2022). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry*, 2022 WL 1018791, at *14. As discussed below, a reduced award of attorneys' fees is appropriate.

### 1. Hourly Rate

Courts must determine if the requested hourly rate is "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. "In what has become known as the 'forum rule,' courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits." *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *6

32

(E.D.N.Y. Feb. 5, 2025) (citing *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024) (quoting *Esquivel*, 2023 WL 6338666, at *17); *but see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 241–43 (E.D.N.Y. 2025) (noting the considerable inflation that has occurred in recent years and the Court's obligation to award attorneys' fees commensurate with current market conditions).

Plaintiff requests an hourly rate of $400.00 for attorney Catalina Sojo, $350.00 for attorney Jarret Bodo, and $125.00 for several paralegals. (Pl.'s Mem., ECF No. 29 ¶ 69; *see generally* Faillace Decl. Ex. 8, ECF No. 28-8 at 1.) Sojo earned her J.D.-equivalent degree from Pontificia Universidad Javeriana in Bogota, Colombia in 2017 and an L.L.M. from Cornell University School of Law in 2019 and worked in intellectual property litigation before joining the Firm in 2020. (Pl.'s Mem., ECF No. 29 ¶ 69(i).) Bodo earned his J.D. from Hofstra University School of Law in 2020 and was admitted to practice in New York in 2021. (*Id.* ¶ 69(ii).) Plaintiff does not identify or offer information about the paralegals labeled "PL" on the attorney billing record. (*See id.* ¶ 69(iii).)

The Court finds that the requested hourly rates are unreasonable. *First*, the rates are not commensurate with counsel's training and experience or consistent with what a reasonable client would pay for comparable legal services from partners (Sojo) and associates (Bodo). *See, e.g.*, *Morales*, 2023 WL 7684775, at *7 (awarding $350.00 hourly rate to Ms. Sojo in a default judgment motion); *Nasir*, 2024 WL 4664722, at *18 (awarding $400.00 hourly rate to solo practitioner practicing employment law for over a decade in this district and New York

33

state courts); *Melo*, 750 F. Supp. 3d at 61–62 (awarding senior associate $325.00 per hour when no information was provided about counsel's experience). *Second*, a rate reduction is warranted in this case in which counsel submitted two default judgment motions that were denied or seriously questioned because of repeated procedural errors, and the instant default motion in which the Court recommends partial denial based on the same procedural errors and incorrect damages calculations. (*See* Sept. 26, 2024 Order; Mar. 19, 2025 Order to Show Cause; §§ IV & VII.A.–C., *supra*.). *Third*, the paralegals "performed routine paralegal tasks . . . and there is no additional information about [their] skills or experience to justify more than a garden-variety hourly rate." *Chacha*, 2025 WL 2609246, at *17; *compare Torres v. K & T Provisions, Inc.*, No. 20-CV-5642 (WFK)(MMH), 2025 WL 942797, at *4 (E.D.N.Y. Mar. 28, 2025) (awarding requested $100 hourly paralegal rate because "she was the Firm's primary point of contact with Plaintiff, and used her [Spanish] language skills not only to translate for Plaintiff at mediation and depositions but also to speak with potential trial witnesses"), *adopted sub nom. by Torres v. K & T Provisions, Inc.*, No. 20-CV-5642 (WFK)(MMH), 2025 WL 1135408 (E.D.N.Y. Apr. 17, 2025). Thus, the Court respectfully recommends the following reduced hourly rates: $350.00 for Sojo, $295.00 for Bodo, and $80.00 for the paralegals.

### 2. Reasonable Hours Expended

"For purposes of determining a reasonable fee, the number of hours billed must also be reasonable[.]." *Abreu*, 2019 WL 2526087, at *5. "The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 211 (E.D.N.Y. 2019). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which

34

compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up).

"Where time entries are vague, duplicative, or otherwise inadequate, a court may make an

across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up).

Consistent with the recommended hourly rate reductions, the Court also finds that the

number of hours expended in this case are unreasonable. Plaintiff reports 4.6 hours for Sojo,

1.5 hours for Bodo, and 5.28 hours for the paralegals, but over 60% of Sojo's time and 30%

of the paralegals' time is attributed to "Amending Default Motion" and related tasks, while

Bodo's sole time entry is "Drafted Default Motion"—*i.e.*, the first deficient motion for default

judgment. (*See* Faillace Decl. Ex. 8, ECF No. 28-8 at 1 (reflecting 2.8 hours for Sojo and 1.6

hours for paralegals on the second and instant default judgment motions).) Where, as here,

"the hours requested include time spent correcting the attorney's own mistakes," a reduction

is warranted. *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895

(LDH)(SJB), 2019 WL 8381264, at *16 (E.D.N.Y. Dec. 9, 2019). On these facts, a 25%

reduction in hours is appropriate, for a total of 8.53 hours.

Thus, the Court respectfully recommends that Plaintiff should be awarded **$1,854.70** in

attorneys' fees.[9]

### G.    Costs

Finally, Plaintiff seeks $602.00 in costs, including court filing and service of process

fees. (*See generally* Aff. Ex. 8, ECF No. 28-8.)

---

[9] The attorneys' fees are calculated as follows: $1,207.50 for Sojo ($350.00 x 3.45 hours); $330.40 for Bodo ($295.00 x 1.12 hours); and $316.80 for the paralegals ($80.00 x 3.96 hours).

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13. Plaintiff is entitled to some, but not all, the requested costs. *First*, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023). Plaintiff is entitled to the $402.00 filing fee for this case because the docket reflects that she paid the fee. (ECF No. 1 Dkt. Entry.) *Second*, the process server's affidavit for La Morenita reflects a $40.00 fee paid to the New York State Secretary of State for service on a corporation. (Aff., ECF No. 6.) The Court may grant an award for this reasonable and customary litigation cost. However, because Plaintiff fails to provide invoices for the requested costs for serving process on the Individual Defendants, those costs should be denied.

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of **$442.00** in costs.

## H.    Post-judgment Interest

Though Plaintiff does not specifically request post-judgment interest, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Assn*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961 and quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)). Accordingly, Plaintiff should be awarded post-judgment interest calculated from "the date of the entry of the judgment" at the statutory rate. 28 U.S.C. § 1961.

## VIII.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's third motion for default judgment at ECF No. 27 should be **granted in part and denied in part** as follows: (1) the Clerk of Court should enter the proposed default judgment (as amended) against Defendant La Morenita Fruit Market Corp only; and (2) Plaintiff should be awarded damages in the amount of **$75,646.26**, which includes: (a) $8,702.48 for unpaid minimum wage pay; (b) $17,375.21 for unpaid overtime wages; (c) $5,708.85 for unpaid spread of hours pay; (d) $31,786.54 in liquidated damages; (e) $9,776.48 in pre-judgment interest to increase by $7.84 per day until the entry of judgment; (f) $1,854.70 for attorneys' fees; (g) $442.00 for costs; and (h) post-judgment interest calculated from the date of entry of judgment pursuant to 28 U.S.C. § 1961.  All other requests for relief should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation on Defendants at the following addresses forthwith: (1) La Morenita Fruit Market Corp, 4807 5th Avenue, Brooklyn, NY 11223; (2) Gabino Arturo Ramos, 2930 86th Street, Apt. 1, Brooklyn, NY 11223-4609; (3) Pamela Mejia Ramos, 2930 86th Street, Apt. 1, Brooklyn, NY 11223-4609.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Merchant.  If a

party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 11, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge